IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

DEC 1 9 2011

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| CHARLES E. LEE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. 1-10-233 |
| | § | |
| CITY OF HARLINGEN, TEXAS, | § | |
| | § | |
| Defendant. | § | |

### AMENDED MEMORANDUM AND ORDER

BE IT REMEMBERED, that on December 19, 2011, the Court considered Defendant's Motion for Summary Judgment, Dkt. No. 19; Plaintiff's response, Dkt. No. 20; and Defendant's reply, Dkt. No. 23.

### I. Background

This case involves a dispute over annexed property. The City of Harlingen is a "home rule city" located in Cameron County, Texas. Dkt. No. 19 at 10. The Texas Local Government Code gives cities such as Harlingen authority to extend city boundaries and annex land adjacent to existing city boundaries. *See* Tex. Loc. Gov't Code Ann. § 43.021 (West 2008). Sometime in November 2005, the Harlingen City Commission placed two adjacent and unannexed tracts of land on Harlingen's 2005 Annexation Plan. *See* Dkt. No. 19-5 at 6. On June 24, 2006, Harlingen published notice of a public hearing in the legal notices section of the Valley Morning Star. Dkt. No. 19-3 at 2. The notice stated in relevant part:

> Notice is hereby given of the 1st public hearing by the City Commission of the City of Harlingen to be held Wednesday, July 5, 2006 at 5:30 p.m. in the City Hall Town Hall, 118 E. Tyler Avenue, Harlingen, Texas to consider the Annexation Plan for annexing the following properties:
>
> TRACT 1: A tract of land containing approximately 392 acres of land
> . . . .

> TRACT 2: A tract of land containing approximately 2,754 acres of land
> . . . .
>
> A metes and bounds description of Tracts 1 and 2 can be viewed on the city website www.myharlingen.us or the offices of the City of Harlingen Planning Department
> . . . .
>
> All interested parties may appear in person or by attorney to show cause for or against the Annexation Plan for annexing the above described tracts of land.

*Id.* (emphasis in original). On July 5, 2006, the hearing occurred as announced. Dkt. No. 19-5 at 2. The meeting minutes indicate that after the announcement of the annexation plan, the only public comment was an inquiry from a director of a retirement village unrelated to this case. *Id.*

On July 15, 2006, Harlingen published a second notice of a public hearing in the legal notices section of the Valley Morning Star. Dkt. No. 19-4 at 2. Other than listing a public hearing date of July 26, 2006, the second notice was essentially the same as the first. *Id.* The second public meeting occurred on July 26, 2006 as scheduled. Dkt. No. 19-6 at 2. The meeting minutes indicate that there were no annexation comments from the public. *Id.* Harlingen's Mananger of Planning and Zoning states that the Annexation Plan at issue "was made available for inspection at the Planning and Zoning Department and was posted on the City of Harlingen website." Dkt. No. 19-7.

On November 19, 2008, Harlingen enacted Ordinance No. 08-65, which extended Harlingen's city limits by annexing the two tracts of land at issue in this case. *See* Dkt. No. 19-2. A service plan for extension of municipal services for the newly annexed area was attached to Ordinance No. 08-65 as exhibit A. *Id.* at 4. The service plan listed divided services as either "provided within 60 days" or "provided within 2-1/2 years." *Id.* at 5.

On August 10, 2010, Plaintiff Charles Lee ("Plaintiff") filed his Original Petition in the 103rd Judicial District Court of Cameron County, Texas. *See* Dkt.

No. 1-2. According to his Petition, Plaintiff lives in the annexed area and is "one of the signers of a [voter-initiated] [p]etition calling for the disannexation from the City of Harlingen . . . ." *Id.* Plaintiff filed his First Amended Petition on September 9, 2010, which is essentially unchanged from the Original Petition other than a request for a writ of mandamus as an alternative form of relief. *See* Dkt. No. 1-3. Plaintiff's Petition contains claims that (1) Harlingen ("Defendant") violated the Texas Open Meetings Act; (2) Defendant violated provisions of Texas Local Government Code Section 43; (3) Defendant's failure to comply with notice requirements violated the equal protection clause of the Fourteenth Amendment; (4) Defendant's failure to comply with notice requirements deprieved Plaintiff of due process of law; and (5) Defendant failed to perform the promises in its service plan, or, to the extent that it did perform, it did so in bad faith. *See id.* Plaintiff petitions, in the alternative, that the court issue a writ of mandamus requiring Defendant to disannex the disputed tracts from the city. *Id.*

Pursuant to 28 U.S.C. § 1441 (a)-(b), Defendant filed its Notice of Removal in this Court on September 22, 2010. Dkt. No. 1. Defendant based its removal on federal question jurisdiction, specifically 42 U.S.C. § 1983. *Id.* However, the Court found "no overt references to any federal statute or provision of the federal Constitution" and on January 7, 2011, ordered Defendant[1] to file a memorandum of law answering the question of whether the case should be remanded for lack of federal subject matter jurisdiction." *See* Dkt. No. 12. On January 11, 2011, Defendant filed its Court-ordered memorandum. Dkt. No. 13. Defendant argued that Plaintiff's petition alleged an equal protection violation without reference to any state authority, thus providing the basis for the Court's federal-question jurisdiction. *See id.* at 2. Defendant argued that Plaintiff had failed to state a due process claim. As to its prior reference to 42 U.S.C. § 1983, Defendant pointed to the jointly-filed case management plan which referenced the statute. However, Defendant failed to answer the Court's concern that the pleadings are devoid of any

---

[1] *See Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005) (removing party has the burden of establishing federal subject matter jurisdiction).

3

reference to the 1983 statute. Nonetheless, based on Plaintiff's equal protection and due process claims the Court retained jurisdiction pursuant to 28 U.S.C. § 1331.[2]

Defendant filed its motion for summary judgment on April 4, 2011. Defendant argues that (1) a *quo warranto* proceeding is the proper method for attacking any procedural irregularites that occur when a city annexes a territory; (2) whether Defendant's service plan was adequate is a question that also must be addressed in a *quo warranto* proceeding; (3) the statutory time for an annexation service plan to be implemented has not passed and thus Plaintiff's claim is not ripe; and (4) Plaintiff is precluded from asserting due process and equal protection claims because annexation is a purely political matter. *See* Dkt. No. 19. Defendant moves for summary judgment on all of Plaintiff's claims. *Id.* Plaintiff responds that (1) his annexation claims are ripe because Defendant promised certain services within 60 days; (2) he has standing pursuant to Tex. Loc. Gov't Code Ann. § 43.056; (3) *quo warranto* proceedings are not necessary here; (4) Ordinance No. 08-65 is void; (5) the alleged open meeting violation renders Ordinance No. 08-65 void. *See* Dkt. No. 20. Defendant replied to Plaintiff's response generally arguing again that Plaintiff lacks standing and arguing that Plaintiff offers no proof to support his claims. *See* Dkt. No. 23.

The Court first addresses whether Plaintiff's equal protection and due process claims—which ostensibly form the underlying basis of this Court's jurisdiction—are prohibited by application of the political question doctrine. Plaintiff claims that Defendant committed due process and equal protection violations by disregarding a variety of Texas Local Government Code requirements. *See* Dkt. No. 1-3 at 9-10. Defendant argues that Plaintiff's constitutional claims are not justiciable because the political question doctrine precludes Plaintiff from asserting them. *See* Dkt. No. 19. Plaintiff did not respond to Defendant's argument.

---

[2] The Court exercised jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

## II. Legal Standard

Article III of the Constitution limits federal court jurisdiction to "cases and controversies." *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ("the concept of justiciability, as embodied in the political question doctrine, expresses the jurisdictional limitations imposed upon federal courts by the case or controversy requirement of Art[icle] III.") (internal quotation marks omitted). "No justiciable 'controversy' exists when parties seek adjudication of a political question." *Massachusetts v. EPA*, 549 U.S. 497, 516, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.2008); *see also Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982 (9th Cir. 2007) ("We hold that if a case presents a political question, we lack subject matter jurisdiction to decide that question.") Thus, Defendant's motion for summary judgment as to Plaintiff's constitutional claims is essentially a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Spectrum Stores*, 632 F.3d at 948 (motion to dismiss on political question grounds treated as a Rule 12(b)(1) motion to dismiss); *Moody Nat'l Bank of Galveston v. GE Life and Annuity Assur. Co.*, 383 F.3d 249, 251 (5th Cir. 2004) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("[A] motion's substance, and not its form, controls."); *see also Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. Unit B Mar. 1981) ("Since the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction.").

The issue of subject-matter jurisdiction may be raised at any point in the proceedings. *Burks v. Texas Co.*, 211 F.2d 443, 445 (5th Cir. 1954). A district court may determine subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's factual findings on disputed facts. *Rodriguez v. Christus Spohn Health System Corp.*, 628 F.3d 731, 734 (5th Cir. 2010) (citing *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001)).

5

Here, the record contains additional facts, none of which appear to be disputed. However, Defendant's argument is based entirely on the pleadings and the Court will determine subject-matter jurisdiction on the complaint alone. *See id.*

### III. Discussion

#### A. Plaintiff's Due Process and Equal Protection Claims

The concept of justiciability is often divided into specific justiciability categories such as advisory opinions, standing, ripeness, mootness, administrative questions, and at issue here, political questions. *See Miles v. Idaho Power Co.*, 778 P.2d 757, 761 (Idaho 1989). It has long been held that annexation is a purely political matter.[3] *See Hammonds v. City of Corpus Christi*, 226 F. Supp. 456, 458-9 (S.D. Tex. 1964), *aff'd*, 343 F.2d 162 (5th Cir. 1965), *cert. denied*, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965) (Judge Garza noted that "[t]he annexation of lands to a city or town has been held without exception to be purely a political matter . . . the remedy of those aggrieved is not in the courts, but in the State Legislature."). Defendant cites *Hunter v. City of Pittsburgh*,[4] a 1907 Supreme Court case which addressed specifically the annexation of territory by municipalities. *Hunter* stated:

> Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them . . . they usually are given the power to acquire, hold, and manage personal and real property. . . . The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by

---

[3] It appears that a then-fourteen-year old Supreme Court anticipated the political question doctrine in *Marbury v. Madison*. 5 U.S. 137, 170 (1803) ("The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.").

[4] 207 U.S. 161 (1907) (overruled on other grounds by *Kramer v. Union Free Sch. Dist. 2*, 395 U.S. 621 (1969)).

6

> such changes suffer inconvenience . . . there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it.

Id. at 178-79. Seventy years after the *Hunter* decision, the Supreme Court noted that even after being overruled on other grounds "the [Hunter] case continues to have substantial constitutional significance in emphasizing the extraordinarily wide latitude that states have in creating various types of political subdivisions and conferring authority upon them." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978). As to annexation being a political question, *Hunter* "remains good law" with two important caveats: (1) cities cannot draw boundaries that "discriminate on an invidious basis, such as race or sex" and (2) cities cannot arrange their boundaries such that it would restrict or dilute votes. *City of Herriman v. Bell*, 590 F.3d 1176, 1185 (10th Cir. 2010). Plaintiff claimed neither of the aforementioned constitutional restrictions on *Hunter* in this case.

Additionally, even if Plaintiff's claims were justiciable it is "well established that the mere failure to follow state law procedures will not support a claim under the United States Constitution." *Jackson Court Condo., Inc. v. City of New Orleans*, 665 F. Supp. 1235, 1248 (5th Cir. 1987); *see also Smith v. City of Picayune*, 795 F.2d 482, 487-88 (5th Cir. 1986) (plaintiff's due process claims lacked merit when premised on state zoning law violation). The basis of this principle is that "the procedural protection afforded by the Fourteenth Amendment is independent of state law procedural protection . . . even if a state fails to follow its own procedures, the United States Constitution is not offended unless the procedural protection actually afforded falls short of the constitutional standard." *Id.*

Without deciding the matter on the merits, the Court notes that Plaintiff is claiming that Defendant's *failure to follow* state procedure violated principles of due process and equal protection. Plaintiff made no claim or argument challenging the protection afforded by the annexation procedures. Moreover, how Plaintiff intended to prove his constitutional claims, particularly his equal protection claim, is unclear

because he proffered no evidence in response to Defendant's motion for summary judgment. Plaintiff did not offer, for example, evidence that the boundaries were drawn on the basis of race or sex discrimination, or that the new boundaries dilute votes. *See City of Herriman v. Bell*, 590 F.3d 1176, 1185 (10th Cir. 2010). What is clear, however, is that Plaintiff's constitutional claims here are precisely the type precluded by law. *See Jackson Court Condo.*, 665 F. Supp. at 1248; *Smith*, 795 F.2d at 487-88; *see also Stern v. Tarrant County Hospital District*, 778 F.2d 1052, 1056 (5th Cir. 1985), cert. denied, 476 U.S. 1108 (1986) ("Converting alleged violations of state law into federal . . . due process claims improperly bootstraps state law into the Constitution").

Defendant's annexation of the two adjacent tracts of land at issue does not present a justiciable case or controversy. *See Hunter*, 207 U.S. 161; *Spectrum Stores*, 632 F.3d at 948; *Hammonds*, 343 F.2d at 163-4; *see also Superior Oil Co. v. City of Port Arthur*, 628 S.W.2d 94, 97 (Tex.App.—Beaumont, 1981, writ ref'd n.r.e.), *appeal dismissed for want of federal question*, 459 U.S. 802, 103 S.Ct. 25, 74 L.Ed.2d 40 (1982). Accordingly, the Court must dismiss Plaintiff's due process and equal protection claims for lack of subject-matter jurisdiction. *Stanley*, 639 F.2d at 1157.

### B. Remand

Removal of this case was initially allowed because the Court ostensibly had jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. At the time of removal, the Court exercised pendant jurisdiction over the remaining state law claims—claims which the Court must now examine whether it has authority to retain. *See* 28 U.S.C. § 1367. There is a significant body of caselaw discussing a federal court's discretion to remand or retain supplemental state claims after the corresponding federal claims are dismissed. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 720 (1988); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996); *see also Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In most instances, a Court can determine whether to retain jurisdiction by evaluating several statutory

and common-law factors. *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011).

However, the facts of this case present the less common scenario where the federal claims have been dismissed for lack of subject-matter jurisdiction. The distinction is critical because "the dismissal of the federal claims for lack of subject matter jurisdiction means that there never was a valid claim within the court's original jurisdiction to which the state claim may be supplemental." *Omega Farm Supply, Inc. v. Tifton Quality Peanuts*, No. 7:07-cv-101(HL) 2008 WL 926981, at *2 (M.D. Ga. Apr. 4, 2008) (quoting *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001)) (internal quotation marks omitted); *accord Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 631–34 (7th Cir. 2001); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). When all federal claims which form the basis for supplemental jurisdiction are dismissed for lack of subject-matter jurisdiction, a district court must dismiss or remand the remaining state claims. *See Omega Farm Supply*, 2008 WL 926981, at *2 (citing 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")). Accordingly, the Court cannot exercise supplemental jurisdiction over the state claims in this case and the matter must be remanded to the 103rd Judicial District Court of Cameron County, Texas.

**IV. Conclusion**

For the foregoing reasons, the Court **DISMISSES WITH PREJUDICE** Plaintiff's federal due process and equal protection claims. The Court **REMANDS** this case to the 103rd Judicial District Court of Cameron County, Texas. "A certified copy of the order of remand shall be mailed by the clerk to the clerk of the

State court. The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c).

DONE at Brownsville, Texas, on December 19, 2011.

Hilda G. Tagle
United States District Judge